**PAUL HASTINGS LLP**
Pedro A. Jimenez
Andres C. Mena
Douglass Barron
200 Park Avenue
New York, NY 10166
(212) 318-6000 (Tel)
(212) 319-4090 (Fax)

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| ENoY S.A.[1] | Case No. 20-11411 (MG) |
| Debtor in a Foreign Proceeding. | |

**DECLARATION OF THE FOREIGN REPRESENTATIVE PATRICIO JAMARNE**
**BANDUC IN SUPPORT OF VERIFIED CHAPTER 15 PETITION**

Patricio Jamarne Banduc hereby declares as follows:

1.      I submit this declaration in support of the *Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding* [Docket No. 2](the "Verified Petition") filed on June 12, 2020 (the "Petition Date") by Rodrigo C. Larrain and Esteban Rigo-Righi, the former representatives of Enjoy S.A. (the "Former Representatives"), as a debtor in a foreign proceeding (the "Foreign Debtor") in connection with its foreign proceeding (the "Foreign Proceeding") pending in the 8th  Civil Court of Santiago in Santiago, Chile (the "Chilean Court").  I was selected as the overseer (*veedor*) of the Foreign Proceeding (in such capacity, the "Overseer") pursuant to the votes of the three largest creditors of the Foreign Debtor submitted to the *Superintencia de Insolvencia y Reemprendimiento* (the "Superintendence"),

---

[1]      The Foreign Debtor's Chilean tax identification number is 96.970.380-7.  The location of the Foreign Debtor's executive office is Av. Presidente Riesco 5711, 15th Floor, Borough of Las Condes, Santiago, Chile, Postal Code 7561114.

and the Superintendence issued its Certificate of Nomination stating that I had been selected as

Overseer on April 30, 2020.  Subsequently, on June 19, 2020, the Superintendence exercised its

rights to delegate its authority to represent the Debtor in insolvency proceedings outside of

Chile and issued a resolution authorizing me, as Overseer, to act as the foreign representative of

the Foreign Debtor (in such capacity, the "Foreign Representative") in the above captioned case

(the "Chapter 15 Case").  On July 8, 2020, I formally replaced the Former Representatives as

the Foreign Representative of the Foreign Debtor in this Chapter 15 Case pursuant to the

*Stipulation and Agreed Order Substituting Foreign Representatives and Related Counsel* (the

"Substitution Order") [Docket No. 17], which confirmed that I am the sole party authorized to

appear and act on behalf of the Foreign Debtor for all purposes in this Chapter 15 Case.

2.      Each of the facts set forth below is true to the best of my knowledge, information

and/or belief based upon my personal knowledge from my review of the books and records of the

Foreign Debtor and/or communications with the Foreign Debtor and its advisors.

### A.      Foreign Representative Background and Qualifications

3.      I am a professor of commercial law at the University of Chile and am a founding

partner of the law firm Jamarne & Cía., located in Santiago, Chile.  I often serve as an overseer

in Chile.  In this regard, I was appointed as overseer by the Superintendence in some of the

largest Chilean insolvency cases, including Isapre Masvida S.A., Hidroeléctrica Duqueco SpA,

Hidroeléctrica El Paso SpA, Cooperativa Agrícola y Lechera Bio Bio Limitada, and

Distribuidora de Industrias Nacionales S.A. among others.  In addition, I served as President of

the Chilean Association of Bankruptcy Trustees (*Asociación Gremial de Síndicos de Quiebras*)

from 2000-2008.   I graduated from the Liceo José Victorino Lastarria de Santiago and received

a Bachelor of Legal and Social Studies from the University of Chile.

**B.    Role of Overseer**

4.      As the Overseer, in this and other reorganization proceedings under Chilean law,
my role is to promote agreements between debtors and creditors, facilitate the filing of
restructuring agreements, and protect the interests of creditors while acting under the supervision
of the Superintendence.  Though the debtor's management remains in control of the debtor
during reorganization proceedings in Chile, the overseer possesses certain supervisory authority,
and can take certain actions necessary to protect the debtor's assets and/or the interests of
creditors.  In addition, the overseer is required to provide a report regarding the judicial
reorganization agreement (the "Plan") proposed by the debtor (the "Overseer Report") at least
three business days prior to the Plan Approval Hearing.  The Overseer Report is required to
include, among other things, the overseer's opinion regarding whether the Plan is feasible in light
of the debtor's financial position, the likely recovery for each class of creditors in the event the
Plan is not approved and the debtor is liquidated, and whether the Plan complies with Chilean
reorganization law.

**C.    The Debtor's Finances and Business Operations**

5.      Pursuant to my duties as Overseer under Chilean Law, I have examined the
Foreign Debtor's books and records and can confirm that the information regarding the Debtor's
finances and business operations contained in the *Declaration of Rodrigo C. Larrain in Support
of Verified Chapter 15 Petition* [Docket No. 3] (the "Larrain Declaration"), is correct, including:
(a) the overview of the Foreign Debtor's business contained in Section C of the Larrain
Declaration; (b) the overview of the Foreign Debtor's capital structure contained in Section D of
the Larrain Declaration; (c) the overview of the Foreign Debtor's financial position contained in
Section E of the Larrain Declaration; and (d) the discussion of the Foreign Debtor's restructuring

efforts prior to the commencement of the Foreign Proceeding contained in Section F of the Larrain Declaration.

6.      I would further note that all of Enjoy's casinos, hotels and other businesses remain closed as of the date of the filing of this declaration.

### D.      The Foreign Proceeding

7.      On April 24, 2020, the Foreign Debtor filed an application to commence the Foreign Proceeding with the Chilean Court and, on April 30, 2020, the Superintendence published a Certificate of Nomination stating that I had been selected as the Overseer for the Foreign Proceeding and Enrique Marco Antonio Ortiz D'amico had been selected as the alternate Overseer.  The Overseer and the alternate Overseer were selected by the Foreign Debtor's three largest creditors, including the indenture trustee under the 10.50% Senior Secured Notes Due 2022 (the "Indenture Trustee").

8.      The Chilean Court commenced the Foreign Proceeding by entering a stay order dated May 5, 2020 (the "Enjoy Stay Order") providing the Foreign Debtor with the protection of the *Protección Financiera Concursal* (the "Reorganization Proceeding Stay") for the period of 30 business days beginning on May 6, 2020 (the "Enjoy Stay Period"), and scheduling the Plan Approval Hearing for the end of that period unless the Reorganization Stay Period is extended by creditors.  On May 27, 2020, the Enjoy Stay Period was extended by creditor vote to July 20, 2020, and the Enjoy Stay Period was subsequently extended to August 14, 2020.[2]

9.      At the conclusion of the Reorganization Proceeding Stay Period, a hearing is held (the "Plan Approval Hearing") where the creditors vote on whether to approve the Plan proposed

---

[2]    The Reorganization Proceeding Stay can be extended for (i) an additional 30 business days with the consent of two or more unaffiliated creditors holding more than 30% of the total debt of the debtor (excluding debt held by affiliates or insiders) and (ii) an additional 60 business days with the consent of two or more creditors holding more than 50% of the total debt of the debtor (excluding debt held by affiliates or insiders).

by the debtor.[3]  The Plan Approval Hearing is currently scheduled for August 14, 2020, and the Foreign Debtor is required to file a Plan at least 10 business days prior thereto, on or about August 2, 2020.[4]

10.     Article 57 of Chile's Law 20720 (the "Reorganization Law"), provides that once the Reorganization Proceeding Stay is in effect, no execution or enforcement procedures may be initiated against the debtor and "ipso facto" clauses cannot be enforced.[5]  Further, the Reorganization Proceeding Stay prohibits any creditor of the debtor from collecting on or enforcing any guarantee such creditor may have obtained from a non-debtor third party of the debtor's obligations to such creditor, even if such guarantee was intended to be an independent obligation of such non-debtor third party.  The Reorganization Proceeding Stay prohibits the enforcement or collection of guarantees provided by non-debtors for any reason, not only because of the commencement of the Reorganization Proceeding.  The Reorganization Proceeding Stay is intended to have worldwide effect.

11.     I understand that the Foreign Debtor plans to use the Foreign Proceeding to preserve and protect its assets for the benefit of all creditors and intends to propose a Plan that will maximize creditor recoveries.  I also understand that the Foreign Debtor is negotiating with its creditors regarding the substantive terms of the Plan and will soon begin the process of soliciting votes in connection with the Plan.

---

[3]    For a Plan to be approved at the Plan Approval Hearing, creditors representing both two-thirds of the total number of creditors in each class of creditors and creditors holding two thirds of the total debt in each class of creditors (in each case calculated by the creditors in each class that attend the Plan Approval Hearing) must vote in favor of the Plan.  Creditors are typically grouped into two separate classes: secured creditors and unsecured creditors.

[4]    Civil Courts in Chile consider Saturdays to be business days.

[5]    Article 57 of the Reorganization Law, along with a certified translation thereof, is attached hereto as **Exhibit B**.

12.    The Foreign Debtor is primarily a holding company, and substantially all of the

assets of Enjoy are held by certain other Enjoy entities that are subsidiaries of the Foreign Debtor

(the "Subsidiary Guarantors") and guarantors of the Foreign Debtor under the indenture

governing the 10.50% Senior Secured Notes Due 2022 (the "Indenture").  If creditors are

allowed to pursue the Subsidiary Guarantors, the value of the Subsidiary Guarantors may be

significantly diminished and Enjoy's ability to successfully reorganize in the Foreign Proceeding

will be severely jeopardized.  Further, though the Subsidiary Guarantors do not possess assets in

the United States, the failure to stay creditor action in the United States may allow one or more

creditors to begin legal actions in the United States against Enjoy or the Subsidiary Guarantors in

an attempt to subvert or disrupt the Foreign Proceeding and the ongoing negotiations between

Enjoy and its creditors that are occurring with respect thereto.  Therefore, the Reorganization

Proceeding Stay entered in the Foreign Proceeding, which prohibits creditors from pursuing

collection efforts against the Subsidiary Guarantors, is critical to the success of the Foreign

Debtor's insolvency proceeding and should be recognized and extended comity by this Court.[6]

### E.    The Chapter 15 Case and Appointment as Foreign Representative

13.    The Foreign Debtor's board of directors purported to appoint each of the Former

Representatives as foreign representatives of the Foreign Debtor and authorized and directed

each Foreign Representative to commence the Chapter 15 Case at a board meeting on May 22,

2020.  At the time, I concurred that this appointment was within the powers of the Foreign

Debtor's management, and on June 12, 2020, the Former Representatives caused an Official

---

[6]    In the Overseer Certificate attached (with a certified translation thereof) as Exhibit C to the verified petition, I
confirmed that the Enjoy Stay Order prevents creditors of Enjoy S.A. "from enforcing any guarantee of any
obligations of Enjoy S.A. provided by any of Enjoy S.A's direct or indirect subsidiaries" during the Enjoy Stay
Period.

Form 410 (Chapter 15 Petition for Recognition of a Foreign Proceeding) [Docket No. 1] to be filed on behalf of the Foreign Debtor.

14.    As set forth in Substitution Order however, on June 17, 2020 the Superintendence filed a notice in the Chilean Proceeding expressing its position that only the Superintendence possessed standing to initiate a chapter 15 case on behalf of the Foreign Debtor, and that, consistent with the powers granted to the Superintendence under Chilean law, it could delegate that authority to the Overseer.  Pursuant to a resolution attached hereto (along with a certified translation thereof) as **Exhibit A**, on June 19, 2020, the Superintendence thereafter exercised its rights to delegate its authority to me, as the Overseer, to serve as the Foreign Representative, and pursuant to a June 24, 2020 order of the Chilean Court, I was directed, as Overseer, to inform this Court of the Superintendence's position, which I did pursuant to a letter submitted to the Court on July 1, 2020 [Docket No. 11].

15.    Pursuant to the Substitution Order, I replaced the Former Representatives as the Foreign Representative in this Chapter 15 Case.  In my capacity as Foreign Representative, it is my intention to pursue the recognition of the Foreign Proceeding as a "foreign main proceeding" as requested in the Verified Petition, which is now scheduled to be heard on July 27, 2020. Further, upon confirmation of the Plan in accordance with Chilean law, it is my intention in my capacity as Foreign Representative to file a separate motion seeking this Court's recognition of the Plan.

### F.    Other Relevant Facts Regarding the Foreign Debtor

16.     The Foreign Debtor is eligible to commence and maintain a case under chapter 15 of the Bankruptcy Code, and venue is proper in this district.  Specifically, the Foreign Debtor has assets in this district in the form of a retainer paid to Gibson, Dunn & Crutcher LLP, and

which retainer is held in a Citibank bank account located in this district.  Additionally, the Foreign Debtor is a party to the Indenture, which is governed by New York law.

17.    The Foreign Debtor is a Chilean publicly traded stock corporation (*sociedad anónima abierta*) organized and existing under the laws of the Republic of Chile and has its registered office in Chile.  The Foreign Debtor's headquarters are located in Chile, its senior executives all reside in Chile and a majority of the members of the board of directors of the Foreign Debtor reside in Chile.

*[signature page follows]*

Pursuant to 28 U.S.C, § 1746, 1 hereby declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Executed on July 15, 2020.
Santiago, Chile

Patricio Jamarne Banduc
Foreign Representative

**Exhibit A**



STATE OF NEW YORK

            )
            )
            )
COUNTY OF NEW YORK   )  ss

## CERTIFICATION

This is to certify that the attached translation is to the best of my knowledge and belief a true and accurate

translation from Spanish into English of the attached Exempt Resolution No. 6893 dated June 19, 2020.

Edward J. Jacob
Divergent Language Solutions, LLC

State of New York

County of New York

Subscribed to and sworn before me this _1st_ day of _July_, 20_20_,

by Edward J. Jacob.

Notary Public

MATTHEW C. ZELAK
NOTARY PUBLIC, State of New York
No. 01ZE6350239
Qualified in New York County
Commission Expires November 7, 2020



183 Madison Avenue, Suite 416 | New York, NY 10016 | p 917.979.4513 | f 415.525.4313
600 California Street, 11th Floor | San Francisco, CA 94108 | p 415.400.4538 | f 415.525.4313
divergent@divergentls.com | www.divergentls.com



**EXEMPT RESOLUTION No. 6893**

**MAT.: AUTHORIZATION TO ACT IN FOREIGN STATES.**

**RE:    INSOLVENCY    REORGANIZATION PROCEEDINGS    FOR    DEBTOR    COMPANY ENJOY  S.A.  CASE  NO.  C-6689-2020  OF SANTIAGO CIVIL COURT 8.**

**SANTIAGO, JUNE 19, 2020**

**LEGAL GROUNDS:**

The powers granted to me under Law 20.720, which replaces the current insolvency regime with a Law on Reorganization and Liquidation of Company and Personal Assets; the provisions of Decree with Force of Law No. 1-19.653, dated November 17, 2001, which sets forth the Consolidated, Harmonized, and Systematized text of Law No. 18.575, Organic Constitutional Law on General Bases of State Administration; under Law No. 19.880, which sets forth the bases for administrative proceedings governing acts of State Administration Bodies; under Office of the Comptroller General Resolution No. 7 of 2019, which sets forth provisions on the exemption of certain decrees and resolutions from constitutionality and legality reviews; the powers granted under Article 304 of Law No. 20.720; and under Supreme Decree No. 112 dated November 11, 2019 of the Ministry of Economy, Development, and Tourism.

**WHEREAS:**

**1.**    Chapter VIII of Law No. 20.720 governs the provisions concerning cross-border insolvency.

**2.**    Article 304 of the aforementioned Law states that *"The Superintendence shall be the body with standing to act in a foreign State on behalf of a proceeding initiated in Chile pursuant to this law or any other special insolvency-related provision, to the extent the applicable foreign law allows.*
*The    Superintendence    may    delegate    this authorization to act to the insolvency trustee who is apprised of the proceedings. Any civil and administrative liability that may be incurred in the exercise of his duties in a foreign proceeding shall be enforced pursuant to the terms provided under this law."*

Hermanos Amunátegui # 228
Santiago, Chile
Phone: (56 2) 2495 25 90
Fax: (56 2) 2495 25 85
www.superir.gob.cl

**3.**      SIR Guideline No. 1 dated July 6, 2016 issued instructions on aspects concerning the processing of cross-border insolvency proceedings.

**4.**      In Filing No. 22912 with the SUPERIR, dated June 19, 2020, the Overseer, Mr. Patricio Jamarne Banduc, asked this Superintendence for "*authorization to act before the U.S. Bankruptcy Courts so that they may grant the Debtor Company something similar to Financial Insolvency Protection while the Insolvency Reorganization Proceedings are in progress, with its respective extensions,*" attaching documents in support of his request.

**5.**      Article 1 of the aforementioned SIR Guideline No. 1 provides that "*The Superintendence shall delegate authorization to act in the foreign State to the Liquidator, Overseer, or Trustee for the Continuation of the Debtor's Business Activities who is apprised of the respective insolvency proceeding, when provided for in a well-grounded resolution issued to that effect (...).*"

**6.**      Pursuant to the information provided by the Overseer, Mr. Patricio Jamarne Banduc, we may note that the provisions concerning cross-border insolvency proceedings are applicable to the above-captioned Insolvency Proceedings, as there are assets held by the debtor abroad.

**7.**      Based on the foregoing procedural background,

## I FIND AS FOLLOWS:

**1.**      Let the Overseer, Mr. Patricio Jamarne Banduc, ID No. 7.511.143-6, domiciled at Avenida Apoquindo 4775, office 1702, Las Condes, Santiago, Chile, **BE AUTHORIZED** to act abroad with respect to the Insolvency Reorganization Proceedings for Debtor Company Enjoy S.A. pursuant to the terms provided under Article 304 of Law No. 20.720.

**2.**      Let the Overseer of the Insolvency Reorganization Proceedings for Debtor Company Enjoy S.A., Mr. Patricio Jamarne Banduc, **BE EMPOWERED** to undertake the actions necessary to carry out the authorization specified in the above paragraph, in the jurisdiction of the United States of America.

**3.**      **LET IT BE REFLECTED** in the record that this authorization will be valid for no more than 6 months from notification hereof, which may be extended by this Superintendence, if the Overseer, Mr. Patricio Jamarne Banduc, so requests, and the procedural background provided shows the need to extend this period.

**4.**      Let the Overseer, Mr. Patricio Jamarne Banduc, **BE INSTRUCTED** to comply with the following:

(i)      Render a detailed account with supporting documents for all expenses he incurs pursuant to the implementation of this authorization.

2

(ii)    Advise of all steps and actions taken pursuant to this authorization, attaching all supporting documents to that effect.

(iii)    Provide notice to the Creditor's Meeting so that it may be informed of the matters about which they must issue an opinion within the framework of these cross-border insolvency proceedings, when the significance of such matters so requires.

This Superintendence must inform the court hearing the proceedings of points (i) and (ii) above, on the last business day of each month. In addition, it must inform the Creditors' Meeting to take place immediately following the delivery of such report, of the above.

**5.**    **LET NOTICE** of this resolution **BE SERVED** via email to the Overseer, Mr. Patricio Jamarne Banduc, by the Filing Desk of this Superintendence.

**Let it be recorded and placed on file,**



INSOLVENCY AND REORGANIZATION
SUPERINTENDENCE / SUPERINTENDENT

[signature]
**HUGO SÁNCHEZ RAMÍREZ**
**INSOLVENCY AND REORGANIZATION**
**SUPERINTENDENCE**

PCP/CVS/POR
**DISTRIBUTION:**
Mr. Patricio Jamarne Banduc
Overseer
**CC:** Eduardo Cáceres Guzmán
Oversight Department Head
Hand-Delivered
Office of the Clerk
File

3



**RESOLUCIÓN EXENTA N° 6893**

**MAT.: AUTORIZA PARA ACTUAR EN ESTADOS EXTRANJEROS.**

**REF.: PROCEDIMIENTO CONCURSAL DE REORGANIZACIÓN DE LA EMPRESA DEUDORA ENJOY S.A. ROL N.° C-6689-2020 DEL 8° JUZGADO CIVIL DE SANTIAGO.**

**SANTIAGO, 19 JUNIO 2020**

**VISTOS:**

Las facultades que me confiere la Ley N.° 20.720, que sustituye el régimen concursal vigente por una Ley de Reorganización y Liquidación de Activos de Empresas y Personas; lo dispuesto en el D.F.L. N.° 1-19.653, de 17 de noviembre de 2001, que fija el texto Refundido, Coordinado y Sistematizado de la Ley N.° 18.575, Orgánica Constitucional de Bases Generales de la Administración del Estado; en la Ley N.° 19.880, que establece bases de los procedimientos administrativos que rigen los actos de los Órganos de la Administración del Estado; en la Resolución N.° 7 de 2019 de la Contraloría General de la República, que fija normas sobre exención del trámite de toma de razón; las facultades conferidas por el artículo 304 de la Ley N.° 20.720 y en el Decreto Supremo N.° 112 de 11 de noviembre de 2019 del Ministerio de Economía, Fomento y Turismo.

**CONSIDERANDO:**

**1.** Que, el Capítulo VIII de la Ley N.° 20.720 regula las normas relativas a la insolvencia transfronteriza.

**2.** Que, el artículo 304 de la referida Ley señala que "*La Superintendencia será el órgano legitimado para actuar en un Estado extranjero en representación de un procedimiento iniciado en Chile con arreglo a esta ley o a toda otra norma especial relativa a la insolvencia, en la medida en que lo permita la ley extranjera aplicable.*

*La Superintendencia podrá delegar esta autorización para actuar en el administrador concursal que esté conociendo del procedimiento. La responsabilidad civil y administrativa en la que pudieren incurrir en el ejercicio de sus funciones en un procedimiento extranjero se hará valer de acuerdo a los términos establecidos en esta ley.*"

**3.** Que, el Instructivo SIR N.° 1 de 6 de julio de 2016 instruyó sobre aspectos relativos a la tramitación del procedimiento de insolvencia transfronteriza.

**4.** Que, mediante Ingreso Superir N.° 22912 de 19 de junio de 2020, el Veedor, señor Patricio Jamarne Banduc, solicitó a esta Superintendencia la *"autorización para actuar ante los Tribunales de Bancarrota de EE.UU. con el objeto que estos otorguen un símil de la Protección Financiera Concursal a la Empresa Deudora, mientras dure el Procedimiento Concursal de Reorganización con sus respectivas prórrogas"*, acompañando documentos que respaldan su solicitud.

**5.** Que, el artículo 1 del referido Instructivo SIR N.° 1 establece que *"La Superintendencia delegará la autorización para actuar en el Estado extranjero en el Liquidador, Veedor o Administrador de la Continuación de las Actividades Económicas del Deudor que estuviere conociendo del procedimiento concursal respectivo, cuando así lo disponga mediante resolución fundada dictada al efecto (…)."*

**6.** Que, acorde a lo informado por el Veedor, señor Patricio Jamarne Banduc, es posible advertir que al Procedimiento Concursal de la referencia le resultan aplicables las normas relativas al procedimiento de insolvencia transfronteriza, por cuanto existirían bienes del deudor en el extranjero.

**7.** Que, en razón de los antecedentes señalados,

### RESUELVO:

**1.** **AUTORÍZASE** para actuar en el extranjero al Veedor, señor Patricio Jamarne Banduc, RUN 7.511.143-6, domiciliado en Avenida Apoquindo 4775, oficina 1702, Las Condes, Santiago de Chile, respecto del Procedimiento Concursal de Reorganización de la Empresa Deudora Enjoy S.A. conforme a los términos señalados en el artículo 304 de la Ley N.° 20.720.

**2.** **FACÚLTESE** al Veedor del Procedimiento Concursal de Reorganización de la Empresa Deudora Enjoy S.A., señor Patricio Jamarne Banduc para ejercer las actuaciones necesarias para llevar a cabo la autorización señalada en el numeral anterior, en la jurisdicción de Estados Unidos de América.

**3.** **DÉJASE** constancia que la presente autorización tendrá una duración máxima de 6 meses desde la notificación del presente acto, la cual puede ser prorrogable por esta Superintendencia, si el Veedor, señor Patricio Jamarne Banduc lo solicita y los antecedentes acompañados acreditan la necesidad de extender dicho período.

**4.** **INSTRÚYASE** al Veedor, señor Patricio Jamarne Banduc, a dar cumplimiento a lo siguiente:

(i) Rendir cuenta detallada con los documentos respaldatorios de todos los gastos en que incurra con motivo del ejercicio de la presente autorización.

2

(ii) Informar de todas las gestiones y actuaciones que realice con motivo de la presente autorización, acompañando al efecto todos los documentos fundantes.

(iii) Citar a Junta de Acreedores para poner en conocimiento de ésta, las materias sobre las cuales le corresponda pronunciarse en el marco del presente procedimiento de insolvencia transfronteriza, cuando la importancia de éstas así lo exijan.

De los puntos (i) y (ii) precedentes deberá informar a esta Superintendencia y al tribunal del procedimiento, el último día hábil de cada mes. Asimismo, deberá informar de lo anterior a la Junta de Acreedores que se celebre en la fecha inmediatamente posterior a la entrega del referido informe.

**5. NOTIFÍQUESE** la presente resolución mediante correo electrónico al Veedor, señor Patricio Jamarne Banduc, por la Oficina de Partes de este Servicio.

**Anótese y archívese,**

HUGO SÁNCHEZ RAMÍREZ
SUPERINTENDENTE DE INSOLVENCIA Y
REEMPRENDIMIENTO

PCP/CVS/POR
**DISTRIBUCION:**
Señor  Patricio Jamarne Banduc
Veedor
**CC.** Eduardo Cáceres Guzmán
Jefe Departamento de Fiscalización
Presente
Secretaría
Archivo

3

**Exhibit B**



STATE OF NEW YORK

                                 )
                                 )
                                 )

COUNTY OF NEW YORK         )      ss

## <u>CERTIFICATION</u>

This is to certify that the attached translation is to the best of my knowledge and belief a true and accurate

translation from Spanish into English of the attached *Article 57. Reorganization Resolution.*

_____

Edward J. Jacob
Divergent Language Solutions, LLC

State of New York

County of New York

Subscribed to and sworn before me this ___10th___ day of ___July___, 20_20_,

by Edward J. Jacob.

_____

Notary Public

MATTHEW C. ZELAK
NOTARY PUBLIC, State of New York
No. 01ZE6350239
Qualified in New York County
Commission Expires November 7, 2020



183 Madison Avenue, Suite 416 | New York, NY 10016 | p 917.979.4513 | f 415.525.4313
600 California Street, 11th Floor | San Francisco, CA 94108 | p 415.400.4538 | f 415.525.4313
divergent@divergentls.com | www.divergentls.com

[…]

Article 57.- Reorganization Resolution. Within five days after the filing indicated in the preceding article is submitted, the court of competent jurisdiction shall issue a resolution designating the Observer ("*Veedor*") and alternative Observer nominated as established in Article 22. In the same resolution, the court shall order the following:

1)   That for the term of thirty days from the notification of this resolution, extendable as provided in Article 58, the Debtor shall enjoy Insolvency Financial Protection under which:

a)   An Insolvency Liquidation proceeding cannot be declared or initiated against the Debtor, nor can summary proceedings, enforcement proceedings of any nature or actions for restitution of property in leasing disputes commence against it. The above shall not apply to labor lawsuits involving obligations that enjoy first class preference. In this case, only the

enforcement and sale of the Debtor's properties are suspended, except if they are labor lawsuits the Debtor has in such capacity in favor of his spouse, his relatives or the managers, administrators, attorneys-in-fact with a general power of attorney for administration or other persons who have an influence on the administration of the Debtor's businesses.  For these purposes, relatives of the Debtor or the Debtor's legal representatives shall be understood to mean their forebearers and descendants and the collateral relatives up to and including the fourth degree by blood or marriage.

b)   The proceedings indicated subparagraph a) above shall be suspended, along with the time periods of the statutes of limitations.

c)   All contracts entered into by the Debtor shall remain in force and effect with the same payment conditions. Consequently, early termination cannot be implemented unilaterally, their accelerated performance cannot be demanded, and the contracted guarantees cannot be cashed in by invoking as grounds the start of an Insolvency Reorganization Proceeding.  The claim of the creditor that violates this prohibition shall be postponed until all the creditors affected by the Judicial Reorganization Agreement are paid, including creditors who are Persons Related to the Debtor.

To implement the postponement indicated in the preceding subparagraph, its declaration shall be requested in an ancillary action before the court hearing the Insolvency Reorganization Proceeding.  The provisions of this subparagraph shall not apply to framework agreements for contracting derivative transactions in which the Debtor is an institutional investor, which shall be governed in these matters by the special rules referred to in paragraphs 2 *et seq.* of Article 140 of this law.

Law 21130
Art. 4.1
Official Gazette
01.12.2019

d)   If the Debtor is listed in any public record as a contractor or provider of any service, and provided it is current in its contractual obligations to the respective principal, it cannot be eliminated or deprived of participating in competitive bidding processes based on the start of an Insolvency Reorganization Proceeding.  If the public entity eliminates the Debtor from its records or discriminates against the Debtor's participation based on the start of a Insolvency Reorganization Proceeding despite the fact that it is current in its obligations to the respective principal, the public entity shall compensate for the damages caused to the Debtor by such discrimination or elimination.

2)   During the Insolvency Financial Protection, the following interim measures and restrictions shall be applied to Debtors:

a)   They shall be subject to the oversight of the Observer designated in the same resolution, who shall have the duties contained in Article 25;

b)   They cannot establish a lien on or transfer their properties, except those properties whose transfer or sale is inherent to their line of business and are strictly necessary for normal operation; and with respect to all other properties or assets, they shall be subject to the provisions of Article 74, and

c)   In the case of legal entities, they cannot amend their articles of association or company bylaws, or grant or revoke powers of attorney. The recording of any transfer of the Debtor Company's shares in the pertinent company registers shall require the authorization of the Observer, who shall grant it to the extent that it does not alter or affect the creditors' rights.  The above shall not apply with respect to open corporations that make public offerings of their shares.

3)   The date on which the Insolvency Financial Protection will expire.

4)   The order to the Debtor to publish the proposed Judicial Reorganization Agreement in the Insolvency Bulleting through the Overseer and submit it to the court of

competent jurisdiction at least ten days before the date set for the Creditors' Meeting. If the Debtor fails to comply with this order, the Observer shall certify this circumstance and the court of competent jurisdiction shall issue the Liquidation Resolution without further proceedings.

5)    The date, location and time for the Creditors' Meeting called to hear and issue an opinion on the proposed Judicial Reorganization Agreement presented by the Debtor. The date of this Meeting shall be the day on which the Insolvency Financial Protection expires.

6)    Within fifteen days from the notification of this resolution, all creditors must evidence their legal standing to act in the Insolvency Reorganization Proceeding to the court of competent jurisdiction, with express indication of the power they confer on their attorneys-in-fact to hear, modify and adopt the Judicial Reorganization Agreement.

7)    The order for the Observer to record a copy of this resolution in the respective real estate registries in the margin of the ownership recording of each of the properties belonging to the debtor.

8)    The order to the Observer to publish his report on the proposed Judicial Reorganization Agreement in the Insolvency Bulletin and submit it to the court of competent jurisdiction at least three days before the date set for holding the Creditors' Meeting that will vote on such agreement. The Observer's Report must contain a well-founded assessment of the following:

a)    Whether the proposed agreement is liable to be fulfilled, taking the Debtor's condition into account.

b)    The probable amount of recovery for each creditor in their respective categories, in the case of a Liquidation Bankruptcy Proceeding, and

c)    Whether the proposed determination of the claims and their ranking indicated by the Debtor are according to law.

If the Observer does not submit the aforementioned report within the indicated time period, the Debtor, any of the creditors or the court of competent jurisdiction shall inform the Superintendence so that the pertinent sanctions are applied. In this case, the Judicial Reorganization Agreement shall be voted on foregoing the Observer's Report.

9)    Within five days following the notification of this resolution, the Debtor and the three largest creditors indicated in the certification of the independent accountant/auditor referred to in Article 55 shall attend a hearing. This hearing shall be held with those who attend and deal with the fees proposed by the Observer.  If an agreement on the amount of the fees and their payment method cannot be reached at the hearing, or none of the aforementioned parties appear, such fees shall be set by the court of competent jurisdiction and are not subject to subsequent appeal.

10) The order to the Debtor to provide the Observer with a copy of all records in accordance with Article 56.  These records and a copy of the resolution shall be published by the Observer in the Insolvency Bulletin within three days after the resolution is issued.

[…]

indicando el porcentaje que cada uno representa en el total del pasivo, con expresión de los tres mayores acreedores, excluidas las Personas Relacionadas al Deudor. La nominación de los Veedores titular y suplente se realizará según el procedimiento establecido en el artículo 22 y, una vez concluido, la Superintendencia extenderá el respectivo Certificado de Nominación contemplado en dicha disposición.

Artículo 56.- Antecedentes que deberá acompañar el Deudor. Aceptada la nominación por el Veedor titular y suplente, la Superintendencia remitirá al tribunal competente el Certificado de Nominación correspondiente. Paralelamente, el Deudor acompañará lo siguiente:

1) Relación de todos sus bienes, con expresión de su avalúo comercial, del lugar en que se encuentren y de los gravámenes que los afecten. Deberá señalar, además, cuáles de estos bienes tienen la calidad de esenciales para el giro de la Empresa Deudora;
2) Relación de todos aquellos bienes de terceros constituidos en garantía en favor del Deudor. Deberá señalar, además, cuáles de estos bienes tienen la calidad de esenciales para el giro de la Empresa Deudora;
3) Relación de todos aquellos bienes que se encuentren en poder del Deudor en una calidad distinta a la de dueño;
4) El certificado a que hace referencia el artículo 55, para la determinación del pasivo afecto a los Acuerdos de Reorganización Judicial. El pasivo que se establezca en este certificado deberá considerar el estado de deudas del Deudor, con una fecha de cierre no superior a cuarenta y cinco días anteriores a esta presentación, con indicación expresa de los créditos que se encuentren garantizados con prenda o hipoteca y el avalúo comercial de los bienes sobre los que recaen las garantías. Este certificado servirá de base para determinar todos los quórum de acreedores que se necesiten en la adopción de cualquier acuerdo, hasta que se confeccione la nómina de créditos reconocidos, conforme al procedimiento establecido en el Párrafo 2 del Título 1 del Capítulo III de esta ley, con sus respectivas ampliaciones o modificaciones, si existieren, y
5) Si el Deudor llevare contabilidad completa, presentará el balance correspondiente a su último ejercicio y un balance provisorio que contenga la información financiera y contable, con una fecha de cierre no superior a cuarenta y cinco días anteriores a esta presentación.
Si se tratare de una persona jurídica, los documentos referidos serán firmados por sus representantes legales.

Artículo 57.- Resolución de Reorganización. Dentro del quinto día de efectuada la presentación señalada en el artículo anterior, el tribunal competente dictará una resolución designando a los Veedores titular y suplente nominados en la forma establecida en el artículo 22. En la misma resolución dispondrá lo siguiente:

1) Que durante el plazo de treinta días contado desde la notificación de esta resolución, prorrogable de conformidad a lo dispuesto en el artículo 58, el Deudor gozará de una Protección Financiera Concursal en virtud de la cual:
a) No podrá declararse ni iniciarse en contra del Deudor un Procedimiento Concursal de Liquidación, ni podrán iniciarse en su contra juicios ejecutivos, ejecuciones de cualquier clase o restituciones en juicios de arrendamiento. Lo anterior no se aplicará a los juicios laborales sobre obligaciones que gocen de preferencia de primera clase, suspendiéndose en este caso sólo la

Biblioteca del Congreso Nacional de Chile          Legislación chilena

ejecución y realización de bienes del Deudor, salvo que se trate de juicios laborales de este tipo que el Deudor tuviere en tal carácter a favor de su cónyuge, de sus parientes, o de los gerentes, administradores, apoderados con poder general de administración u otras personas que tengan injerencia en la administración de sus negocios. Para estos efectos, se entenderá por parientes del Deudor o de sus representantes legales los ascendientes, descendientes, y los colaterales hasta el cuarto grado de consanguinidad y afinidad, inclusive.

b) Se suspenderá la tramitación de los procedimientos señalados en la letra a) precedente y los plazos de prescripción extintiva.

c) Todos los contratos suscritos por el Deudor mantendrán su vigencia y condiciones de pago. En consecuencia, no podrán terminarse anticipadamente en forma unilateral, exigirse anticipadamente su cumplimiento o hacerse efectivas las garantías contratadas, invocando como causal el inicio de un Procedimiento Concursal de Reorganización. El crédito del acreedor que contraviniere esta prohibición quedará pospuesto hasta que se pague a la totalidad de los acreedores a quienes les afectare el Acuerdo de Reorganización Judicial, incluidos los acreedores Personas Relacionadas del Deudor.

Para hacer efectiva la postergación señalada en el inciso anterior, deberá solicitarse su declaración en forma incidental ante el tribunal que conoce del Procedimiento Concursal de Reorganización. Lo dispuesto en esta letra no se aplicará a los convenios marco de contratación de operaciones de derivados en que el deudor sea un inversionista institucional, los que se regirán en esta materia por las normas especiales a que se refiere el inciso segundo y siguientes del artículo 140 de esta ley.

d) Si el Deudor formare parte de algún registro público como contratista o prestador de cualquier servicio, y siempre que se encuentre al día en sus obligaciones contractuales con el respectivo mandante, no podrá ser eliminado ni se le privará de participar en procesos de licitación fundado en el inicio de un Procedimiento Concursal de Reorganización. Si la entidad pública lo elimina de sus registros o discrimina su participación, fundado en la apertura de un Procedimiento Concursal de Reorganización, a pesar de encontrarse al día en sus obligaciones con el respectivo mandante, deberá indemnizar los perjuicios que dicha discriminación o eliminación le provoquen al Deudor.

Ley 21130
Art. 4 N° 1
D.O. 12.01.2019

2) Que durante la Protección Financiera Concursal se aplicarán al Deudor las siguientes medidas cautelares y de restricción:

a) Quedará sujeto a la intervención del Veedor titular designado en la misma resolución, el que tendrá los deberes contenidos en el artículo 25;

b) No podrá gravar o enajenar sus bienes, salvo aquellos cuya enajenación o venta sea propia de su giro o que resulten estrictamente necesarios para el normal desenvolvimiento de su actividad; y respecto de los demás bienes o activos, se estará a lo previsto en el artículo 74, y

c) Tratándose de personas jurídicas, éstas no podrán modificar sus pactos, estatutos sociales o régimen de poderes. La inscripción de cualquier transferencia de acciones de la Empresa Deudora en los registros sociales pertinentes requerirá la autorización del Veedor, que la extenderá en la medida que ella no altere o afecte los derechos de los acreedores. Lo anterior no regirá respecto de las sociedades anónimas abiertas que hagan oferta pública de sus valores.

3) La fecha en que expirará la Protección Financiera Concursal.

4) La orden al Deudor para que a través del Veedor publique en el Boletín Concursal y acompañe al tribunal

Biblioteca del Congreso Nacional de Chile - www.leychile.cl - documento generado el 31-May-2020

Biblioteca del Congreso Nacional de Chile    Legislación chilena

competente, a lo menos diez días antes de la fecha fijada
para la Junta de Acreedores, su propuesta de Acuerdo de
Reorganización Judicial. Si el Deudor no da cumplimiento a
esta orden, el Veedor certificará esta circunstancia y el
tribunal competente dictará la Resolución de Liquidación,
sin más trámite.

    5) La fecha, lugar y hora en que deberá efectuarse la
Junta de Acreedores llamada a conocer y pronunciarse sobre
la propuesta de Acuerdo de Reorganización Judicial que
presente el Deudor. La fecha de dicha Junta será aquella en
la que expire la Protección Financiera Concursal.

    6) Que dentro de quince días contados desde la
notificación de esta resolución, todos los acreedores
deberán acreditar ante el tribunal competente su
personería para actuar en el Procedimiento Concursal de
Reorganización, con indicación expresa de la facultad que
le confieren a sus apoderados para conocer, modificar y
adoptar el Acuerdo de Reorganización Judicial.

    7) La orden para que el Veedor inscriba copia de esta
resolución en los conservadores de bienes raíces
correspondientes al margen de la inscripción de propiedad
de cada uno de los inmuebles que pertenecen al deudor.

    8) La orden al Veedor para que acompañe al tribunal
competente y publique en el Boletín Concursal su informe
sobre la propuesta de Acuerdo de Reorganización Judicial, a
lo menos tres días antes de la fecha fijada para la
celebración de la Junta de Acreedores que votará dicho
acuerdo. Este Informe del Veedor deberá contener la
calificación fundada acerca de:

    a) Si la propuesta es susceptible de ser cumplida,
habida consideración de las condiciones del Deudor;

    b) El monto probable de recuperación que le
correspondería a cada acreedor en sus respectivas
categorías, en caso de un Procedimiento Concursal de
Liquidación, y

    c) Si la propuesta de determinación de los créditos y
su preferencia indicada por el Deudor se ajustan a la ley.

    Si el Veedor no presentare el referido informe dentro
del plazo indicado, el Deudor, cualquiera de los acreedores
o el tribunal competente informará a la Superintendencia
para que se apliquen las sanciones pertinentes. En este
caso, el Acuerdo de Reorganización Judicial se votará con
prescindencia del Informe del Veedor.

    9) Que dentro de quinto día de efectuada la
notificación de esta resolución, deberán asistir a una
audiencia el Deudor y los tres mayores acreedores indicados
en la certificación del contador auditor independiente
referida en el artículo 55. Esta diligencia se efectuará
con los que concurran y tratará sobre la proposición de
honorarios que formule el Veedor. Si en ella no se arribare
a acuerdo sobre el monto de los honorarios y su forma de
pago, o no asistiere ninguno de los citados, dichos
honorarios se fijarán por el tribunal competente sin
ulterior recurso.

    10) La orden al Deudor para que proporcione al Veedor
copia de todos los antecedentes acompañados conforme al
artículo 56. Estos antecedentes y la copia de la
resolución de que trata este artículo serán publicados
por el Veedor en el Boletín Concursal dentro del plazo de
tres días contado desde su dictación.


    Artículo 58.- Prórroga de la Protección Financiera
Concursal. El plazo establecido en el número 1) del
artículo anterior para la Protección Financiera Concursal
podrá prorrogarse hasta por treinta días, si el Deudor
obtiene el apoyo de dos o más acreedores, que representen
más del 30% del total del pasivo, excluidos los créditos
de las Personas Relacionadas con el Deudor. Hasta el décimo
día anterior al vencimiento del plazo antes señalado, el